IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FORTRESS IRON L.P., | ) Case No. |
|     PLAINTIFF, | ) |
| v. | ) |
| DIGGER SPECIALTIES, INC., | ) |
|     DEFENDANT. | ) |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Fortress Iron L.P. ("Fortress" or "Plaintiff"), hereby files this Original Complaint for Patent Infringement against Defendant, Digger Specialties, Inc. ("Digger" or "Defendant"), and alleges as follows:

### Jurisdiction

1. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### Parties

2. Plaintiff, Fortress Iron L.P., is a limited partnership organized and existing under the laws of the State of Texas, with its principal place of business located at 1720 North First Street, Garland, Texas 75040.

3. Defendant Digger Specialties, Inc. is a corporation organized and existing under the laws of the State of Indiana, with a regular and established place of business at 3446 US 6 East, Bremen, IN, 46506.

### Venue

4. This Court has personal jurisdiction over Defendant because Defendant has a regular and established place of business in this District located at 3446 US 6 East, Bremen, IN, 46506. Further, Defendant has availed itself of the privileges, rights and benefits of the laws of the

1

State of Indiana and this District, and has committed acts within this District giving rise to these claims, including by one or more of manufacturing, importing, selling, or offering to sell its Westbury VertiCable Aluminum Railing that infringes the asserted patents.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because Defendant resides in this District and/or has a regular and established place of business in this District and has committed and is committing acts of infringement in this District.

## Background

6. Fortress has over 20 years of experience designing and manufacturing unique and innovative, high-quality building products including a variety of types of metal railing products used in outdoor construction. One of Fortress's break-through building solutions is the FortressCable V-Series steel cable railing.

7. Understanding the value of its innovation, Fortress sought and obtained patent protection for the FortressCable V-Series steel cable railing.

8. Thus, Fortress is the owner by assignment of U.S. Patent No. 11,643,838 (the "'838 Patent"), which was duly and legally issued by the United States Patent & Trademark Office on May 9, 2023. A copy of the '838 Patent is attached as Exhibit A.

9. Fortress is also the owner by assignment of U.S. Patent No. 12,180,735 (the "'735 Patent"), which was duly and legally issued by the United States Patent & Trademark Office on December 31, 2024. A copy of the '735 Patent is attached as Exhibit B.

10. The '838 Patent was filed on July 6, 2022, and is a continuation of and claims priority to the '735 Patent, which is a continuation and claims priority to U.S. Patent No. 10,883,290 (the "'290 Patent"), which is a continuation of and claims priority to U.S. Patent No. 9,790,707 (the "'707 Patent"), which is a nonprovisional of and claims priority to U.S. Provisional Patent Application Serial No. 61/979,055, filed on April 14, 2014.

11. The '735 Patent was filed on December 31, 2020, and is a continuation of and claims priority to the '290 Patent, which is a continuation of and claims priority to the '707 Patent,

which is a nonprovisional of and claims priority to U.S. Provisional Patent Application Serial No. 61/979,055, filed on April 14, 2014.

12. Defendant Digger is a direct competitor of Fortress who also produces building products used in outdoor construction. One of Digger's railing products is its Westbury VertiCable Aluminum Railing. Digger introduced its original Westbury VertiCable Aluminum Railing on or about March 31, 2015.

13. In response to assertions of infringement by Fortress, Digger redesigned its Westbury VertiCable Aluminum Cable Railing.

14. Digger has been engaging in one or more of manufacturing, importing, selling, or offering to sell its redesigned Westbury VertiCable Aluminum Railing since at least 2018 and continues to offer to sell and sell that product today.

15. Fortress brought suit in this Court alleging infringement of the '290 Patent on or about January 8, 2021, and later amended its complaint to include allegations of infringement of the '707 Patent.

16. The Court held the '707 Patent and the '290 Patent invalid for failing to name a co-inventor, Hua-Ping Huang. That judgment is currently on appeal.

17. The '838 and '735 Patents name Hua-Ping Huang as a co-inventor.

**Inventorship and Ownership of the '838 and '735 Patents**

18. Fortress realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

19. Co-inventors, Matt Sherstad and Kevin Burt assigned their rights in the '838 Patent to Fortress by written assignment executed on April 11, 2015, which is duly recorded at Reel/frame 060414/0859 in the United States Patent and Trademark Office.

20. Co-inventor, Shih-Te Lin executed a written assignment of the '838 Patent to Fortress on or about December 20, 2022, which is duly recorded at Reel/frame 062823/0193 in the United States Patent and Trademark Office.

21. Co-inventors, Matt Sherstad and Kevin Burt assigned their rights in the '735 Patent to Fortress by written assignment executed on April 11, 2015, which is duly recorded at Reel/frame 054788/0342 in the United States Patent and Trademark Office.

22. Co-inventor, Shih-Te Lin executed a written assignment of the '735 Patent on or about December 20, 2022, which is duly recorded at Reel/frame 062823/0193 in the United States Patent and Trademark Office.

23. Co-inventor, Hua-Pin Huang's rights in the invention and the '838 and '735 Patents vested in his employer, QUAN ZHOU YODDEX BUILDING MATERIAL CO., LTD., by operation of Chinese law as a service invention.

24. QUAN ZHOU YODDEX BUILDING MATERIAL CO., LTD. assigned its rights to the invention claimed by and the '838 and '735 Patents to Fortress by written assignment executed February 17, 2023, which is duly recorded at Reel/frame 062823/0287 in the United States Patent and Trademark Office.

25. Fortress is the sole owner by assignment of the '838 Patent, which was duly and legally issued by the U.S. Patent and Trademark Office on May 9, 2023. The '838 Patent is valid and enforceable.

26. Fortress is the sole owner by assignment of the '735 Patent, which was duly and legally issued by the U.S. Patent and Trademark Office on December 31, 2024. The '735 Patent is valid and enforceable.

27. The '838 and '735 Patents name co-inventors, Matt Sherstad, Kevin Burt, Shih-Te Lin, and Hua-Ping Huang. As such, the '838 and '735 Patents are not invalid for failing to name all co-inventors. More specifically, the '838 and '735 Patents are not invalid for failing to name co-inventor, Hua-Ping Huang.

## Count One – Infringement of U.S. Patent No. 11,643,838

28. Fortress realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

4

29. Digger infringes and continues to infringe the '838 Patent by one or more of manufacturing, importing, offering for sale, or selling in the United States its Westbury VertiCable Aluminum Cable Railing (the "Accused Product") that embodies one or more of the inventions claimed in the '838 Patent.

30. Digger directly infringes and continues to infringe at least Claim 1 of the '838 Patent. A claim chart comparing the Accused Product to Claim 1 of the '838 Patent is attached as Exhibit C.

31. The Accused Product is a vertical cable barrier.

32. The Accused Product includes a top rail comprising a top web portion and a pair of top leg portions extending from the top web portion, where the top web portion defines a plurality of top through holes spaced apart along the top web portion.

33. The Accused Product includes a bottom rail comprising a bottom web portion and a pair of bottom leg portions, where the bottom web portion and the pair of bottom leg portions form a channel, and the bottom web portion defines a plurality of first bottom through holes spaced apart along the bottom web portion and aligned with the top through hole.

34. The bottom rail of the Accused Product further comprises an internal member disposed within the channel and defines a second bottom through hole, where the internal member is secured to inner surfaces of the channel.

35. The Accused Product includes a rigid support member that vertically extends between the top rail and the bottom rail.

36. The Accused Product includes a first vertical cable disposed adjacent the rigid support member, where a top end of the first vertical cable is received in and directly attached to a hollow tubular shank of a first top swage fitting, and a bottom end of the first vertical cable is received in and directly attached to a hollow tubular shank of a first bottom swage fitting.

37. The top end of the first vertical cable of the Accused Product extends through one of the plurality of top through holes, and the bottom end of the first vertical cable extends through

the second bottom through hole and one of the plurality of first bottom through holes disposed in vertical alignment with the one top through hole.

38. The Accused Product includes a second vertical cable disposed adjacent the rigid support member, where a top end of the second vertical cable is received in and directly attached to a hollow tubular shank of a second top swage fitting, and a bottom end of the second vertical cable is received in and directly attached to a hollow tubular shank of a second bottom swage fitting.

39. The top end of the second vertical cable of the Accused Product extends through another of the plurality of top through holes, and the bottom end of the second vertical cable extends through another of the plurality of first bottom through holes disposed in vertical alignment with the another top through hole.

40. The Accused Product includes a first female adjustable end member coupled to the first bottom swage fitting with at least a portion of the first female adjustable end member being disposed within the channel, where the first female adjustable end member is larger in size than the second bottom through hole.

41. Adjusting the first female adjustable end member of the Accused Product adjusts a tension in the first vertical cable.

42. The Accused Product includes a second female adjustable end member coupled to the second bottom swage fitting, where at least a portion of the second female adjustable end member is disposed within the channel.

43. Adjusting the second female adjustable end member of the Accused Product adjusts a tension in the second vertical cable.

44. Accordingly, Digger directly infringes and continues to infringe at least Claim 1 of the '838 Patent under 35 U.S.C. § 271(a).

45. By directly infringing, Digger has injured Fortress and is liable for monetary damages, interest, and costs pursuant to 35 U.S.C. § 284 in an amount adequate to compensate

Fortress for Digger's infringement, including without limitation, any profits lost by Fortress as a result.

46. On or about May 12, 2023, counsel for Fortress sent counsel for Digger, email correspondence providing notice and a copy of the '838 Patent and informing of Digger's infringement of the '838 Patent.

47. Digger did not cease and desist its infringing activities in response to this notice.

48. At least since Digger was provided notice and a copy of the '838 Patent by email correspondence to its counsel, Digger has known about the '838 Patent and that Digger's continued actions constitute infringement of the '838 Patent. Digger is, therefore, also liable for willful infringement of the '838 Patent. Fortress seeks treble damages for such willful infringement by Digger.

49. Digger has been and is inducing infringement of the '838 Patent by actively and knowingly inducing others, including end installers and end users of the Accused Product, to make, use, sell, offer for sale, or import the Accused Product that embody, use, or perform an invention claimed in the '838 Patent, in violation of 35 U.S.C. § 271(b).

50. Digger has been and is contributing to the infringement of the '838 Patent by selling or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing an invention of the '838 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

51. Unless restrained by the Court, Digger's actions will cause ongoing harm to Fortress for which it has no adequate remedy at law and for which it seeks injunctive relief under 35 U.S.C. § 283.

## Count Two – Infringement of U.S. Patent No. 12,180,735

52. Fortress realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

53. Digger infringes and continues to infringe the '735 Patent by one or more of manufacturing, importing, offering for sale, or selling in the United States its Westbury VertiCable

Aluminum Cable Railing (the "Accused Product") that embodies one or more of the inventions claimed in the '735 Patent.

54. Digger directly infringes and continues to infringe at least Claim 1 of the '735 Patent. A claim chart comparing the Accused Product to Claim 1 of the '735 Patent is attached as Exhibit D.

55. The Accused Product is a vertical cable rail panel.

56. The Accused Product includes a top rail with a cap member coupled to a top web member, where the top web member defines a plurality of top through holes spaced apart along the top web member, and the top rail has a first end and a second end disposed opposite the first end.

57. The Accused Product includes a bottom rail with a first end and a second end disposed opposite the first end, where the bottom rail has a bottom web portion and a pair of bottom leg portions.

58. The bottom web portion and the pair of bottom leg portions of the Accused Product form a channel, and the bottom web portion defines a plurality of bottom through holes spaced apart along the bottom web portion and aligned with the plurality of top through holes.

59. The Accused Product includes an internal member that is disposed within the channel and defines a bearing surface spaced apart from the bottom web portion and further defines a bottom opening with at least one flat side.

60. The internal member of the Accused Product is secured to inner surfaces of the channel.

61. The Accused Product includes a rigid support member that extends vertically between the top rail and the bottom rail and is disposed between the first end of the top rail and the second end of the top rail.

62. The Accused Product includes a vertical cable comprising a cable member, a top hollow tubular member, and a bottom hollow tubular member, where the vertical cable is disposed

8

adjacent the rigid support member and has a top end and a bottom end disposed opposite the top end.

63. The top end of the vertical cable of the Accused Product extends through one of the plurality of top through holes.

64. The bottom end of the vertical cable of the Accused Product extends through the bottom opening and extends through one of the plurality of bottom through holes disposed in vertical alignment with the one top through hole.

65. The top hollow tubular member of the Accused Product is swaged to the cable member and at least a portion of the top hollow tubular member is larger in size than the one top through hole such that the vertical cable is maintained through the one top through hole.

66. The bottom hollow tubular member of the Accused Product is swaged to the cable member.

67. The Accused Product includes a nut that is coupled to the bottom hollow tubular member, where the nut is larger in size than the bottom opening.

68. Adjusting the nut of the Accused Product adjusts a tension in the vertical cable, and a bearing surface of the nut contacts the bearing surface of the internal member.

69. Each of the first and second ends of the top rail and the bottom rail of the Accused Product are configured to be received by respective brackets.

70. Accordingly, Digger directly infringes and continues to infringe at least Claim 1 of the '735 Patent under 35 U.S.C. § 271(a).

71. By directly infringing, Digger has injured Fortress and is liable for monetary damages, interest, and costs pursuant to 35 U.S.C. § 284 in an amount adequate to compensate Fortress for Digger's infringement, including without limitation, any profits lost by Fortress as a result.

72. On or about January 6, 2025, counsel for Fortress sent counsel for Digger, email correspondence providing notice and a copy of the '735 Patent and informing of Digger's infringement of the '735 Patent.

73. Digger did not cease and desist its infringing activities in response to this notice.

74. At least since Digger was provided notice and a copy of the '735 Patent by email correspondence to its counsel, Digger has known about the '735 Patent and that Digger's continued actions constitute infringement of the '735 Patent. Digger is, therefore, also liable for willful infringement of the '735 Patent. Fortress seeks treble damages for such willful infringement by Digger.

75. Digger has been and is inducing infringement of the '735 Patent by actively and knowingly inducing others, including end installers and end users of the Accused Product, to make, use, sell, offer for sale, or import the Accused Product that embody, use, or perform an invention claimed in the '735 Patent, in violation of 35 U.S.C. § 271(b).

76. Digger has been and is contributing to the infringement of the '735 Patent by selling or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing an invention of the '735 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

77. Unless restrained by the Court, Digger's actions will cause ongoing harm to Fortress for which it has no adequate remedy at law and for which it seeks injunctive relief under 35 U.S.C. § 283.

## Jury Demand

78. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Fortress demands a trial by jury on all issues so triable.

## Relief Requested

79. Fortress respectfully requests that judgment be entered in its favor and against Digger as follows:

    A. A judgment that Digger has infringed, either literally or under the doctrine of equivalents, the '838 Patent;

    B. A judgment that Digger has infringed, either directly, contributorily, or by inducement, the '838 Patent;

    **C.**    A judgment that Digger has infringed, either literally or under the doctrine of equivalents, the '735 Patent;

    **D.**    A judgment that Digger has infringed, either directly, contributorily, or by inducement, the '735 Patent;

    **E.**    A judgment and order that Digger pay Fortress its damages, costs, expenses, pre-judgment and post-judgment interest for its infringement of the '838 Patent;

    **F.**    A judgment and order that Digger pay Fortress its damages, costs, expenses, pre-judgment and post-judgment interest for its infringement of the '735 Patent;

    **G.**    A judgment and order finding that Digger's infringement of the '838 Patent has been willful and awarding Fortress treble damages;

    **H.**    A judgment and order finding that Digger's infringement of the '735 Patent has been willful and awarding Fortress treble damages;

    **I.**    A judgment and order finding that this is an exceptional case under 35 U.S.C. § 285 and awarding Fortress its reasonable attorneys' fees;

    **J.**    An order enjoining Digger, its officers, agents, employees, contractors, affiliates, successors and assigns, and all those controlled by, acting on behalf of, in privity with, or acting in concert or active participation with Digger from:

        1.    Directly infringing the '838 Patent, including but not limited to, by making, using, offering to sell, selling, or importing the Accused Product in or into the United States;

        2.    Contributorily infringing the '838 Patent by selling or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing an invention of the '735 Patent and

11

    not a staple article or commodity of commerce suitable for substantial non-infringing use;

3. Inducing infringement of the '838 Patent by actively and knowingly inducing others, including end installers and end users of the Accused Product, to make, use, sell, offer for sale, or import the Accused Product that embody, use, or perform an invention claimed in the '838 Patent;

4. Directly infringing the '735 Patent, including but not limited to, by making, using, offering to sell, selling, or importing the Accused Product in or into the United States;

5. Contributorily infringing the '735 Patent by selling or offering to sell the Accused Product, knowing it to be especially made or especially adapted for practicing an invention of the '735 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use; and

6. Inducing infringement of the '735 Patent by actively and knowingly inducing others, including end installers and end users of the Accused Product, to make, use, sell, offer for sale, or import the Accused Product that embody, use, or perform an invention claimed in the '735 Patent;

**K.** An order that Digger destroy any Accused Product and any other products that infringe the '838 Patent that it has in inventory and cancel all outstanding orders for any such products;

**L.** An order that Digger destroy any Accused Product and any other products that infringe the '735 Patent that it has in inventory and cancel all outstanding orders for any such products; and

**M.** Any and all other relief that the Court deems appropriate.

Dated: January 31, 2025                            **FOLEY & LARDNER LLP**


                                                                    s/ *Jonathan W. Garlough*
JONATHAN W. GARLOUGH (IN Bar No. 3032945)
**Foley & Lardner LLP**
321 N. Clark Street, Suite 3000
Chicago, IL  60654-4762
Tel:  (312) 832-4500
Fax:  (312) 832-4700
Email:  jgarlough@foley.com

PAUL V. STORM *(Pro Hac Vice* to be filed)
JOHN J. MAY *(Pro Hac Vice* to be filed)
CHANCE L. MOSER *(Pro Hac Vice* to be filed)
**Foley & Lardner LLP**


*Attorneys for Plaintiff Fortress Iron L.P.*