UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FORTRESS IRON L.P., | |
| Plaintiff/Counter-Defendant, | |
| v. | CAUSE NO. 3:25cv99 DRL-SJF |
| DIGGER SPECIALTIES, INC., | |
| Defendant/Counter-Claimant. | |

OPINION AND ORDER

This is a patent infringement action. Fortress Iron L.P. sued Digger Specialties, Inc. alleging infringement of U.S. Patent Nos. 11,643,838 (the '838 patent) and 12,180,735 (the '735 patent)—two patents for vertical cable railing systems. Digger answered and counterclaimed. The company cited Fortress's inequitable conduct *vis-à-vis* these two patents (in one count each) and sought a declaration that each was invalid and unenforceable. Today Fortress moves to dismiss the counterclaim and to strike the affirmative defense of unclean hands under Federal Rule of Civil Procedure 12(b)(6), which the court denies.

BACKGROUND

Taking all well-pleaded allegations in Digger's counterclaim as true, as the court must, *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001), the following facts emerge for purposes of deciding today's motion. This background requires some retelling of a prior infringement suit between these same parties before turning to the current one.

Fortress and Digger both sell pre-assembled cable deck railing, and Fortress claims to own four patents for steel and aluminum vertical cable railing products. In January 2021, Fortress sued Digger, also filed in this district and assigned to another presider (Judge Cristal C. Brisco), alleging

Digger infringed two of these four patents: U.S. Patent No. 9,790,707 (the '707 patent) and U.S. Patent No. 10,883,290 (the '290 patent) [18 ¶ 9-11]. *See Fortress Iron L.P. v. Digger Specialties, Inc.* (3:21cv14). Those patents claimed priority to, or claimed the benefit from, the filing date of Provisional Application No. 61/979,055 (the '055 provisional application), filed with the United States Patent and Trademark Office on April 14, 2014 [18 ¶ 17-19].

The '055 provisional application originally listed Kevin T. Burt as the sole inventor [*id.* ¶ 22]. He is a Fortress employee [*id.* ¶ 23-24]. On May 6, 2014, an attorney filed a request to correct inventorship of the '055 provisional application to add, as an inventor, Fortress's owner (Matthew Sherstad) [*id.* ¶ 26, 28-29]. With Messrs. Burt and Sherstad the named inventors on the '055 provisional application, the patents were issued [*id.* ¶ 30-31]. In the earlier lawsuit, Mr. Burt testified he considered himself the primary inventor on the patents and applications claiming priority to the '055 provisional application [*id.* ¶ 25]. No documentation indicated Mr. Sherstad had any input on the invention's design [*id.* ¶ 83, 88].

During discovery in the first federal suit, Digger learned that the design in the '055 provisional application contained solutions proposed to an earlier failed prototype by two individuals, Hua-Ping Huang and Shih-Te Lin, while Mr. Burt developed the prototype with two Chinese companies, Quan Zhou Yoddex Building Material Co. Ltd. (YD) and Yinxin Handicrafts Co., Ltd. (YX) [*id.* ¶ 43, 48-49, 52-54, 57-59, 90]. The contributions of Messrs. Lin and Huang carried forward to each of Fortress's subsequently filed patent applications [*id.* ¶ 66]. Digger says Mr. Burt testified in a deposition that Mr. Huang was a coinventor, that Mr. Burt admitted in an email that Fortress should have included Messrs. Huang and Lin as inventors on the patents, and that Fortress's failure to include the two was "an oversight" [*id.* ¶ 60-62]. According to Digger,

2

Mr. Burt knew he hadn't invented the portions of the '055 provisional application attributable to the work of Messrs. Lin and Huang [*id.* ¶ 76].

Shortly after Mr. Burt's deposition, on November 7, 2022, Digger asserted its final invalidity contentions (its stated reasons for believing the patents were invalid), which included the claim of incorrect inventorship [*id.* ¶ 92]. Digger says at this time Fortress knew both Mr. Lin and Mr. Huang were not listed, but should have been listed, as inventors on the two patents asserted in that lawsuit [*id.* ¶ 93-94]. This kicked off what Digger calls a "campaign" to add additional inventors to Fortress's vertical cable rail barrier applications and patents, which was concealed from Digger until February 20, 2023 [*id.* ¶ 113-14].

Mr. Burt, at the direction of Fortress's counsel (Jake May), reached out to Mr. Lin and explained that he and Mr. Huang should have been included as inventors [*id.* ¶ 95-96].[1] Around that same time, Mr. Burt was notified that Mr. Huang couldn't be found, and neither of the two Chinese companies knew how to contact him [*id.* ¶ 97]. Fortress knew this as well [*id.* ¶ 98]. Shortly thereafter, Mr. Burt, based on instruction from Fortress's counsel, emailed Mr. Lin and others at YD to prepare the necessary documents to amend inventorship to include Mr. Lin as an inventor so Fortress's patents wouldn't be invalidated [*id.* ¶ 100-01, 103, 106-08]. These subsequent conversations and documents didn't mention Mr. Huang or the need to add him as an inventor [*id.* ¶ 104, 109]. On December 19, 2022, Messrs. Sherstad and Burt agreed to add Mr. Lin as an inventor to the '707 and '290 patents [*id.* ¶ 125].

---

[1] With particularity, Digger repeatedly identifies individuals who, either as an inventor or as legal counsel for instance, executed on the steps that give rise to fraud or inequitable conduct, but the counterclaims in all respects are maintained as against the company. In short, no individuals are parties, and Digger never alleges that these individuals acted outside their agency or authority on Fortress's behalf, but instead this has been done to meet the obligations of pleading under Rule 9(b). For the ease of reading this background, the court often just refers to Fortress here.

On December 20, 2022, Mr. Lin executed an assignment purportedly transferring to Fortress "the full and exclusive right, title and interest for the United States, its territories and possessions, and all foreign countries in and to the invention relating to" the application for the '707 patent (the first issued patent), which was intended to apply to all patents and applications stemming therefrom (including the '290 patent), and represented that Mr. Lin had "the full and unencumbered right to sell, assign, and transfer the interests sold, assigned, and transferred" by the document [*id.* ¶ 111, 120-21]. Mr. Lin didn't execute any assignment of his patent rights and interest to YD [*id.* ¶ 112]. Just before, on November 21, 2022, Fortress sought to exclude Digger from advancing incorrect inventorship as a basis to argue that the patents were invalid because otherwise Fortress would be required to "expend significant resources" to investigate Digger's assertion that the patents were invalid, all the while knowing it had a duty to correct inventorship [*id.* ¶ 115, 119].

As to Mr. Huang's ownership rights, Digger says Fortress's stance was that his rights have "always been held under Chinese law by his employer [YD], and [these rights were] assigned to Fortress" by way of a February 17, 2023 assignment stating that YD "owns an interest" in Fortress's applications and patents [*id.* ¶ 139, 142]. As alleged, this document "purportedly" transferred YD's rights and interests to Fortress [*id.* ¶ 142].

By April 11, 2023, the PTO issued certificates of correction for each of the '707 and '290 patents, adding Mr. Lin as an inventor [*id.* ¶ 128]. Digger claims that, even at this time, Fortress knew inventorship still wasn't correct, at a minimum because Mr. Huang still needed to be added as an inventor [*id.* ¶ 130]. Fortress requested the court order the PTO director to issue a certificate

4

of correction to add Mr. Huang as an inventor to the '707 and '290 patents [*id.* ¶ 176]. The court ultimately denied this request [*id.*].

In opposing Digger's summary judgment motion, which argued invalidity based on incorrect inventorship, Fortress countered that Mr. Huang had no ownership interests in the patents because under Chinese law, any ownership interest he would have had transferred to YD [*id.* ¶ 132]. Digger alleges that Fortress presented no admissible evidence of this [*id.* ¶ 132-33]. Fortress also alternatively argued that had Mr. Huang been located, he "would have readily given his written consent on the relevant USPTO forms" [*id.* ¶ 135, 137].

Judge Brisco held the patents invalid for incorrect inventorship because inventorship couldn't be corrected under 35 U.S.C. § 256(a) and because Fortress couldn't petition the PTO to correct inventorship under 35 U.S.C. § 256(b). *Iron L.P. v. Digger Specialties, Inc.*, 748 F. Supp. 3d 614, 621 (N.D. Ind. 2024). In reaching this determination, at least as alleged now in this second suit, the court didn't decide whether Mr. Huang, like Mr. Lin, retained his rights and interest in the applications and patents or whether Mr. Huang's rights and interest were (or even could have been) transferred to YD by operation of Chinese law. *Id.* Fortress appealed the judgment to the Federal Court of Appeals. *See Fortress Iron, L.P. v. Digger Specialties, Inc.*, No. 24-2313 (Fed. Cir. September 12, 2024).

This brings us to the current lawsuit. Here, Fortress asserts infringement of two additional patents: the '838 patent and the '735 patent [18 ¶ 16]. The applications for the '838 and '735 patents were filed on July 6, 2022 and December 31, 2020 respectively [*id.* ¶ 17]. These patents also claim priority to the filing date of the '055 provisional application [*id.* ¶ 17-19]. Digger says, according to Fortress's view, no new subject matter has been added to any of Fortress's four

5

applications and patents since the filing of the '055 provisional application. [*id.* ¶ 20]. Accordingly, says Digger, all purported inventions claimed in the four patents were fully disclosed at the time Fortress filed the '055 provisional application [*id.* ¶ 21]. The applications for the '838 and '735 patents also listed only Messrs. Burt and Sherstad as inventors; thus, says Digger, the applications failed to list inventorship correctly when they were filed [*id.* ¶ 145-46, 155-56].

Digger alleges that, when the PTO issued a notice of allowance for the '838 patent on December 27, 2022 (a process indicating it believes a pending application is in condition for allowance as an issued patent), Fortress knew inventorship on the '838 patent wasn't correct [*id.* ¶ 147-51]. Fortress (through counsel) filed papers with the PTO to add Mr. Lin as an inventor to the '838 patent on March 3, 2023, but no paperwork to add Mr. Huang [*id.* ¶ 152-54]. Digger says Fortress didn't file paperwork to add Mr. Lin as an inventor to the application for the '735 patent until October 25, 2024, despite having paperwork to do so as early as December 20, 2023 [*id.* ¶ 157]. Like the '838 patent, Fortress didn't have necessary paperwork to add Mr. Huang as an inventor to the '735 patent [*id.* ¶ 158].

Digger says Fortress then "devised a scheme" to correct inventorship in the '838 and '735 patent applications by adding Mr. Huang so the patents wouldn't be held invalid for incorrect inventorship, which would preclude infringement assertions, as was the case in the earlier lawsuit [*id.* ¶ 159-60]. According to Digger, federal law requires each inventor to execute an oath or declaration in connection with a "claimed invention in an application for patent" and allows an applicant to "execute a Substitute Statement in lieu of an oath or declaration," if, for example, "the inventor…cannot be found or reached after diligent effort" [*id.* ¶ 163]. The Substitute

6

Statement must identify the inventor and, among other things, the relationship between the inventor and the person or entity filing the Substitute Statement [*id.* ¶ 167].

As alleged in the counterclaim, Fortress knew Mr. Huang couldn't be found, so the company (through its counsel and Mr. Burt) filed a Substitute Statement in the application for the '838 patent sometime in February 2023 [*id.* ¶ 162, 164, 166]. But, as Fortress knew, for the company to have authority to execute a Substitute Statement on behalf of Mr. Huang, the company had to own Mr. Huang's ownership interest in the applications for the asserted patents [*id.* ¶ 165]. According to the counterclaim, in the Substitute Statement, Fortress represented that the relationship between Mr. Huang (the inventor) and Fortress (the entity submitting the Substitute Statement) was one of "assignor" and "assignee," as shown below:

Relationship to the inventor to whom this substitute statement applies:

- [ ] Legal Representative (for deceased or legally incapacitated inventor only),
- [x] Assignee,
- [ ] Person to whom the inventor is under an obligation to assign,
- [ ] Person who otherwise shows a sufficient proprietary interest in the matter (petition under 37 CFR 1.46 is required), or
- [ ] Joint Inventor.

[*id.* ¶ 169]. Digger alleges this constituted an express and false representation to the PTO that Mr. Huang's relationship to Fortress was that of assignor (Mr. Huang) and assignee (Fortress) [*id.* ¶ 171]. The PTO accepted the request to add Messrs. Lin and Huang as inventors in the application for the '838 patent, which it issued on May 9, 2023 [*id.* ¶ 172-73].

Fortress filed a Substitute Statement in the application for the '735 patent on October 25, 2024—identical to that filed for the '838 patent [*id.* ¶ 174, 177-79]. The PTO accepted the Substitute Statement and added Messrs. Lin and Huang as inventors to the '735 patent, which was ultimately issued on December 31, 2024 [*id.* ¶ 180-81].

7

In this second suit, Digger asserts two counterclaims for declarations of unenforceability: one for each of the '838 and '735 patents. Digger says the '838 and '735 patents are void and unenforceable because Fortress violated its duty of candor and good faith in dealing with the PTO when, through its counsel and a primary inventor, the company intentionally made false representations in filing the Substitute Statement for each of the patents and misrepresenting the assignor-assignee relationship between Mr. Huang and Fortress [*id.* ¶ 183-89, 213-19]. Digger says Fortress filed the Substitute Statements and the assignment purporting to transfer YD's interest in the applications and patents, with no mention of Mr. Huang's interests, at the same time—thus, Fortress had no basis to represent or show Mr. Huang was in an assignor-assignee relationship with Fortress [*id.* ¶ 189-93, 219-23; *see also id.* ¶ 142].

Digger says the misrepresentations were material to the patentability of the '838 and '735 patents because "but for" the Substitute Statement in each application, Mr. Huang wouldn't have been added as an inventor [*id.* ¶ 200, 230]. Digger also says Fortress knew the PTO wouldn't investigate or question the assertions made in the Substitute Statements because a Substitute Statement requires acknowledgement of the penalties for making a false statement therein [*id.* ¶ 206-08, 236-38]. According to Digger, there was another option on the Substitute Statements—"[p]erson to whom the inventor is under an obligation to assign"—but Fortress didn't select this option because doing so would have required evidence showing Mr. Huang's ownership interests had been transferred to Fortress, which the company lacked [*id.* ¶ 201-04, 231-34]. Digger concludes that Fortress acted deliberately through its agents with the specific intent to deceive the PTO into adding Mr. Huang as an inventor to the '838 and '735 patents so Fortress could

assert the patents against Digger without risking the patents being held invalid, as was the case in the earlier lawsuit [*id.* ¶ 209, 240]. Digger calls this inequitable conduct [*id.* ¶ 210, 241].

Digger also claims that the '735 patent is void and unenforceable for inequitable conduct because Fortress intentionally and deceptively withheld material information about its inability to add Mr. Huang as an inventor in the first lawsuit [*id.* ¶ 175, 242]. Digger further alleges that Fortress didn't tell the PTO that, in the first lawsuit, Fortress unsuccessfully petitioned the court to order the PTO to add Mr. Huang as an inventor to the '707 and '290 patents [*id.* ¶ 176, 244]. Digger views these facts as material information the PTO "should have been able to consider" before accepting the Substitute Statement for the '735 patent [*id.* ¶ 245]. This, according to Digger, shows that Fortress withheld information from the earlier lawsuit from the PTO with the specific intent to deceive it into adding Mr. Huang as an inventor so Fortress could assert the '735 patent against Digger without Fortress incurring the same risk of the patent being held invalid for incorrect inventorship [*id.* ¶ 256].

Fortress moves to dismiss the counterclaim and the affirmative defense of unclean hands under Rule 12(b)(6). Digger opposes the motion. Fortress subsequently requested oral argument on its motion and filed its reply brief on May 20, 2025, thereby making the motion ripe. The court declines oral argument because the briefing smartly presents the issues without it.

## STANDARD

Though this is a patent case, the court applies the prevailing Rule 12(b)(6) standard. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2012) (regional circuit law applies to procedural issues not specific to patent law). In reviewing such a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences

in the non-movant's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint (or counterclaim as it is here) must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because inequitable conduct claims are unique to patent law, whether such a claim "has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Exergen Corp.*, 575 F.3d at 1326.

## DISCUSSION

Everyone involved with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the PTO. 37 C.F.R. § 1.56(a). That duty equally pertains to the disclosure of inventorship. "[E]ach individual who is the inventor or a joint inventor of a claimed invention in an application for patent shall execute an oath or declaration." 35 U.S.C. § 115(a). An inventor must declare that he or she "believes himself or herself to be the original inventor or an original joint inventor of a claimed invention in the application" and that he or

10

she authorizes the patent application. 35 U.S.C. § 115(b). A Substitute Statement can be executed in lieu of the inventor's oath or declaration when those requirements cannot be met—for example, when the applicant is an assignee in relationship to the inventor, having received the rights and interests of the inventor. 35 U.S.C. § 115(d). An assignee, either a "person to whom the inventor has assigned or is under an obligation to assign the invention," may then apply for a patent. 35 U.S.C. § 118.

As alleged, Fortress falsely claimed to be an assignee of the rights and interests of the various inventors (particularly Mr. Huang) when it filed the Substitute Statements in its application through which the company received the '838 and '735 patents. To counter an allegation of infringement, an accused infringer (like Digger) may assert a breach of the patentee's duty of candor—known as an "inequitable conduct" counterclaim. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (*en banc*). If proven, inequitable conduct bars the patent's enforcement. *Id.* Ultimately to prove such a claim, Digger must present evidence that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n.3. "A breach of this duty—including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information—coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007).

These "standards for intent and materiality [] foster full disclosure to the PTO," but, as a corollary, the pleading of "inequitable conduct has become a significant litigation strategy."

*Therasense*, 649 F.3d at 1288. The charge of inequitable conduct "cast[s] a dark cloud over the patent's validity and paint[s] the patentee as a bad actor," and often with "ruinous consequences for the reputation of [the] patent attorney," all the while "it discourages settlement and deflects attention from the merits of validity and infringement issues." *Id.* For this reason, to prevail in such a claim, the patentee must have acted with the specific intent to deceive the PTO; negligence or gross negligence in misrepresenting or omitting a fact will not suffice. *See id.* And in a case "involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).

The pleading requires more. Inequitable conduct must be pleaded with particularity under Rule 9(b). *Exergen*, 575 F.3d at 1326. "Rule 9(b) requires identification of the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. Though the party asserting the counterclaim may aver knowledge and intent generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

A. *Counterclaim's Particularity and Plausibility.*

For its first argument, Fortress calls certain aspects of Digger's approximately 45-page counterclaim false and conclusory. Whether the allegations might be "false" or eventually debunked after summary judgment or trial must await another day's decision. Threadbare recitals of a claim's elements or conclusory legal statements will not suffice to demonstrate a plausible

12

claim, *see Iqbal*, 556 U.S. at 678, but Digger's counterclaim presents much more than that. It pleads sufficient facts not just to adumbrate a plausible claim of inequitable conduct but to state one with particularity. For instance, the counterclaim alleges that Fortress's counsel and one joint inventor intentionally made the false representation (who), the nature of the false representation by omitting Mr. Huang as an inventor on two Substitute Statements or by signifying Fortress as his assignee (how), the timing of these representations in the Substitute Statements (when), the materiality of these representations in that the patents would not have been issued or that the application would have needed to be abandoned (why), with a fair inference that the company's agents knew the information and withheld it with a specific intent to deceive the PTO. *See Exergen*, 575 F.3d at 1327-29.

In presenting its motion, Fortress often argues one favorable inference among candidates of plausible inferences, but the court must take fair inferences in Digger's favor in deciding this motion. Fortress says by clicking the "assignee" box on the Substitute Statement, it may have represented that it was an assignee, but not that Mr. Huang was an assignor. Fortress views as "demonstrably untrue" the allegation that the form expressly calls Mr. Huang an assignor. Fortress also says a Substitute Statement that avers that an inventor cannot be reached after diligent effort doesn't need a written assignment from that inventor for the company truthfully to designate itself an "assignee."

An applicant must be either the inventor, or, if filing on the inventor's behalf, someone with proper authority (such as an assignee) to act in the inventor's place. 35 U.S.C. §§ 115, 118; 37 C.F.R. § 1.64(b). The Substitute Statement asks the applicant to identify its status to proceed before the PTO—not just the applicant's proper classification, but its classification in relationship

13

to the inventor. For purposes of pleading, it is plausible, as Digger pleads, that by self-designating "assignee" on the forms, Fortress made an express representation that it was an assignee in relation to the inventors, including Mr. Huang, particularly if Digger's allegation of knowledge bears fruit later—namely, that Fortress knew there was no documentation that substantiated an assignment from Mr. Huang to YD, Fortress, or anyone else. Argument over what the form represents, including how it should be interpreted in light of what Fortress knew and what it intended to accomplish, and in light of what had occurred before Fortress submitted the Substitute Statements to the PTO, cannot be resolved at the pleading stage.

Nor can the issue of whether Mr. Huang assigned his rights to Fortress, whether directly or through YD, be resolved on the counterclaim. Fortress says YD transferred its rights to Fortress by a recorded and written assignment after such rights inured to YD's benefit from Mr. Huang. Thus, when Fortress selected "assignee" on the Substitute Statements, this was an accurate statement rather than a misrepresentation, notwithstanding that Fortress's rights came directly from YD and only indirectly from Mr. Huang. Digger contests whether Mr. Huang's rights were ever assigned to Fortress, saying Fortress has no evidence of an employment agreement or anything else showing Mr. Huang's rights transferred by operation of Chinese law. And Fortress never explains how, as a matter of law, Mr. Huang's rights became that of YD.

The court cannot decide the merits. Fortress invites the court to make an assumption—that Fortress received an assignment of YD's rights and thereby those of Mr. Huang as inventor—but without showing why that must be true as a matter of law and contra the plausible import of this counterclaim. Whether there might be a defense to Digger's allegations, or whether there might be proof that refutes its allegations, are all subjects of another day. The question is

not whether the allegations compel an inference of inequitable conduct, only whether the allegations present a plausible claim, and they do. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses.").

From here, Fortress challenges whether Digger sufficiently pleaded the materiality of a misrepresentation. Digger must ultimately prove "but-for materiality"—meaning that but-for the misrepresentation, the patent would not have been issued. *Therasense,* 649 F.3d at 1291. At this pleading stage, the counterclaim must plausibly allege materiality. *See, e.g., Kranos IP Corp. v. Riddell, Inc.*, 334 F. Supp.3d 907, 913 (N.D. Ill. 2018) (applying Federal Circuit law) (pleading must "allege facts giving rise to a reasonable inference that the PTO would have rejected [the] application had the named individuals brought the [statement or omission] to its attention."). According to Fortress, Digger failed to plead that, but for checking the "assignee" box on a Substitute Statement, the PTO would not have issued the patents with Mr. Huang as a coinventor.

Digger's counterclaim plausibly pleads materiality. The company alleges that, "but for" filing of the Substitute Statements with a false representation, the PTO would not have added Mr. Huang as an inventor on the patents; and that these Substitute Statements played a critical role because, without them, the patent application would either issue with incorrect inventorship or need to be abandoned for failure of all inventors to meet the requirements of 35 U.S.C. § 115 [18 ¶ 196, 200, 226, 230]. Their materiality to the validity of these two patents could not be clearer if these allegations ultimately prove true. *See Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1301 (Fed. Cir. 2002) ("A patent is invalid if more or less than the true inventors are named."); *PerSeptive*

15

*Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) ("As a critical requirement for obtaining a patent, inventorship is material."). Of course, Fortress will have an opportunity to gather and present evidence that such representations were not material; but, taking Digger's factual allegations as true and granting it all reasonable inferences, as the court must now, the counterclaim adequately pleads inequitable conduct claims.[2]

Fortress last challenges whether the counterclaim plausibly alleges that the company (through its counsel and one coinventor) acted with the intent to deceive the PTO when they submitted the Substitute Statements. Pleading "intent to deceive" requires sufficient factual allegations from which one may reasonably infer a specific individual "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1328-29. At pleading, an inference of deceptive intent simply must be "reasonable," meaning it must be "plausible and flow from the facts alleged." *Id.* at 1329 n.5 (cleaned up); *see also Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

Fortress says Digger fails to plead that Fortress's agents knew of the material misrepresentations and made them with deceptive intent. Digger responds by pointing to specific allegations in its counterclaim that Fortress's decision to select "assignee" on the Substitute Statements was an intentional and knowing misrepresentation motivated by its desire to have a

---

[2] As an alternative argument on materiality, Fortress argues that Digger's counterclaim hasn't properly pleaded the materiality of the prior lawsuit's order invalidating the '707 and '290 patents, much less that Fortress (through its counsel) acted with the intent to deceive the PTO by not disclosing this order. Digger asserts this theory as an alternative basis for inequitable conduct as to the '735 patent alone [18 ¶ 242-47]. The court need not decide this issue because a Rule 12(b)(6) motion doesn't permit piecemeal dismissal of parts of claims, and Digger has otherwise sufficiently pleaded inequitable conduct claims. *See Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

second shot at suing Digger. Digger says these two individuals, acting for Fortress, executed and submitted the Substitute Statements, with a "knowingly" false statement on each, because they knew if the patents issued with incorrect inventorship or if the patents that were subject of the first lawsuit were invalidated, Fortress would have no other legal recourse against Digger [18 ¶ 160, 197-98, 209, 227-28, 240, 246]. In so doing, Digger alleges that these two individuals acted deliberately with the specific intent to deceive the PTO [*id.* ¶ 209, 240, 246]. The counterclaim explains how these two individuals knew the representations were untrue [*id.* ¶ 171, 179]. These allegations, with the context of the others that Digger offers as facts to be proven, suffice to plead plausible claims of inequitable conduct under the governing standards. The court must deny the motion to dismiss accordingly.

    B. *Need for a Written Assignment.*

Fortress presents a legal challenge to the counterclaim's sufficiency—that as a matter of law no written assignment was needed from Mr. Huang when he, as an employee of YD, coinvented the products. Fortress cites Article 6 of the Chinese Patent Law to explain that, even without a written assignment from this coinventor, an "invention-creation that is accomplished by a person in the course of performing any task for an entity to which the person belongs, or mainly by using materials or technical means of the said entity is a service invention-creation," confers on the entity (as patentee) rather than the individual the right to apply for a patent belonging to it [16-8]. Assuming that this law applies, the company's theory is that rights transferred from Mr. Huang to YD, and then ultimately to Fortress through the written assignment from YD.

17

An assignment of patent rights must occur in writing, but patent ownership may be transferred through means other than an assignment. 35 U.S.C. § 261; *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1380 (Fed. Cir. 2009). To get to its desired conclusion, however, Fortress must parlay—just in its way of thinking, by leveraging through collateral estoppel what it calls Judge Brisco's finding in the prior lawsuit that, for purposes of two other patents, "Mr. Huang was a YD employee." But without more on the law, this way of thinking comes up short all its own. In truth, Fortress seeks to introduce (or assume) not just one fact but a bevy of facts that exceeds the scope of this counterclaim: that Mr. Huang was an employee at YD, that as an employee he accomplished this invention, and that he did so in the course of performing a task for YD or by mainly using its tools, materials, or technical means. Fortress offers no legitimate means for the court to find these as facts on the basis of this counterclaim or because the law directs such findings at this pleading stage. And Fortress never explains why being an employee alone necessarily translates into all these other things. Without closing the loop, Mr. Huang being an employee at some unknown time with YD may or may not be a fact of consequence.

Nor can collateral estoppel be used today. Issue preclusion forecloses "relitigation in a subsequent action of an issue of law or fact that has been litigated and decided." *La Preferida v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 n.7 (7th Cir. 1990) (citation omitted). To successfully invoke issue preclusion, the party asserting it must establish that (1) the issue sought to be precluded was the same as that involved in the prior action, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Id.* at 905-06. Fortress merely points to a single sentence in the "factual background" section of Judge Brisco's summary

18

judgment ruling. *See Iron L.P.*, 748 F. Supp.3d at 617. That ruling granted summary judgment for Digger and invalidated the patents because Mr. Huang should have been a named inventor on two other patents and because his omission could not be corrected. *Id.* at 621. Fortress never connects the dots to show why the passing reference to Mr. Huang being a YD employee was essential to the judgment, *see La Preferida*, 914 F.2d at 905-06, and inevitably so, for nothing in the court's reasoning relied on his employment status, *see Iron L.P.*, 748 F. Supp.3d at 621.

In the end, Fortress's motion in this regard invites the court to rule on a defense theory rather than on a challenge to the legal sufficiency of Digger's counterclaim. This the court cannot do on this record or at this pleading stage. And because Digger plausibly alleges that no assignment ever occurred or that any such relationship existed to effectuate a transfer—"Fortress never had any contract, assignment, employment agreement, or anything else showing that Mr. Huang ever transferred his patent rights and ownership interest to YD" [18 ¶ 133]—the court must take this allegation as true at this stage rather than assume that Fortress's alternative story must be true. The court must deny the motion to dismiss accordingly.

C. *Unclean Hands.*

In its answer, Digger presents unclean hands as a fourth affirmative defense to Fortress's complaint. In its motion to dismiss, at least in the title and conclusion alone, Fortress seeks to strike it. But the company develops no argument or legal authority, whether under Rule 12(b)(6) or Rule 12(f) for doing so, and the court won't abdicate its neutral role and advocate as counsel for any party. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (court isn't "obliged to research and

19

construct legal arguments for parties, especially when they are represented by counsel."). The court must deny the motion to dismiss in this final respect.

## CONCLUSION

Accordingly, the court DENIES Fortress's motion to dismiss [20] and DENIES the request for oral argument [25].

SO ORDERED.

July 31, 2025                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court